STATE of Delaware, Petitioner,

v.

Jacob HORTON,* Respondent.

No. 0804012692.

Family Court of Delaware, Sussex County.

Submitted: Sept. 3, 2008.
Decided: Oct. 9, 2008.

* Pseudonyms are used to protect the privacy of those involved in the case.

Stacey Cohee, Esquire, Deputy Attorney General, Georgetown, DE, Attorney for the Petitioner.

Eric Mooney, Esquire, Mooney & Nutter, P.A., Georgetown, DE, Attorney for David E. Becker.

## OPINION

HENRIKSEN, J.

On July 25, 2008, Jacob Horton (juvenile defendant) pled no contest to Endangering the Welfare of a Child (f), and Unlawful Sexual Contact 3rd Degree (m). The State entered a *nolle prosequi* on all remaining charges. Sentencing was deferred until September 03, 2008, in order for a CAS evaluation[1] to be completed. The female victim was 5 years old at the time of the incident. The defendant had turned 14 less than a month before the incident.

At the sentencing hearing on September 03, 2008, as well as in preparation for that hearing, the Court reviewed several recommendation letters it received from friends and neighbors of the defendant, all of which attested to his politeness, good manners, and good behavior. These letters also demonstrated this juvenile is part of a loving, close-knit, law-abiding, and supportive family.

The Court also reviewed the psychological assessment (CAS evaluation) performed August 12, 2008, by Dr. Betty Kirkpatrick, licensed psychologist, who is employed by the Division of Child Mental Health for the Department of Services for Children, Youth, and Their Families of the State of Delaware. The examiner noted that the juvenile has been a special education student classified as having a learning disability. He has had no history of disciplinary problems, and he has had no prior legal history. The examiner noted that the juvenile "appears to have a fund of knowledge regarding sex that is immature compared to many 14 year olds." The examiner reported that the juvenile believed that pornography portrayed realistic sexual relationships and alcohol and drugs made sex more fun. The juvenile ordered pornography for the television or Internet, and incurred a bill of $80.00 in one month.

The juvenile denied the charges. The juvenile's parents believe that their son is innocent of the charges. Both the juvenile and the parents stated they took the no contest plea on the advice of their attorney, who told them they had a 50/50 chance of proving the juvenile's innocence in a trial.

Based upon the assessments and interviews, in combination with the JSOAP and the ERASOR, which are both clinician-completed instruments, the professional

---

1. A CAS evaluation is performed by a psychologist employed by the Children's Department. The evaluation consists of interviews with the defendant as well as the defendant's parent(s). Tests are also administered which are designed to measure such things as the child's emotional, educational, and sexual level of understanding, including assessments to attempt to measure the juvenile's risk of reoffending. The psychologist explores the child's birth, the background of the child's parents, the family history of the child and any siblings, as well as the school and prior criminal history of the child.

examiner considered the juvenile to be at low risk for similar sexual acting out.

According to Dr. Kirkpatrick, the information about the juvenile's arrest has leaked out into the community. The juvenile has been subject to bullying, name calling, and harassment. "Packs of children yell at him and have spit on him. [He] had his pants pulled down and had garbage thrown on him." Dr. Kirkpatrick reported that the juvenile wants to be a police officer or a mechanic when he finishes school.

Not only did Dr. Kirkpatrick find the juvenile to be of low risk for sexually acting out, Dr. Kirkpatrick also recommended that the juvenile not be listed on the sex offender registry. Dr. Kirkpatrick believed that the juvenile's best interest would be served if he received community based treatment with a counselor experienced in treating sex offenders.

Both the victim's father and mother expressed to the Court how upset they were over the devastating affects this event has had on their 5 year old child's previously very happy and trusting personality. The child experiences sleepless nights, and she has become more reticent in school. Unlike before the incident, this young victim is now cautious around other people and about making friends. She does not want to go outside her house. It should be noted that the juvenile defendant resides only a few homes away from the victim in the same neighborhood. This young victim now does not like to wipe herself after going to the bathroom. The parents feel as though their daughter, the victim, has become a prisoner in her own home as a result of the offense. The victim's 14 year old brother, formerly a friend of the defendant juvenile, is very angry at the defendant. The victim's parents believed that the juvenile defendant was a good person who they could trust with their young daughter. The victim's parents continue to believe that the defendant's parents are good people.

As to how to resolve the dilemma that the defendant and the victim might have contact with each other because they live so close together in the same neighborhood, the victim's parents suggested that the Court consider the possibility of ordering the juvenile defendant to live with some other relatives or family rather than continue to reside in the neighborhood with the defendant's parents.

The victim's parents want the defendant to get appropriate treatment and help. In part, the victim's parents feel that placing the defendant on the sex registry, even at the lowest level of Tier I, would be helpful in their healing process and appropriate as a punishment to the defendant. At the same time, however, the victim's parents do not want to harm the defendant, especially if the defendant can receive appropriate treatment which will keep him from doing a similar act to another young victim. In the end, the victim's parents asked that the defendant be placed at Tier I on the sex registry, where only the police agencies would have a record, instead of noticing the defendant's name in public places and on the Internet. The victim's parents also favored deferring the decision of whether or not the defendant should be registered until a later date after the Court has the opportunity to determine how the defendant's treatment progressed, and to what risk assessment the defendant should be assigned based upon the results and recommendations of the post-treatment testing.

The State recommended the defendant be committed to the Division of Youth Rehabilitative Services at Level V, but reduced to Level III with community based supervision and treatment, no contact provisions, and a Tier I registration for law enforcement knowledge only. Counsel for the defendant opposed registration.

Counsel emphasized the opinion given by the independent professional who performed the CAS evaluation. Defense counsel also noted his concern with the stigma that has already attached to the defendant and which may further prevent the defendant from entering into future career goals of law enforcement and other job opportunities, as well as the defendant's immediate participation in high school ROTC and volunteering at the local fire department.

■ At the conclusion of the hearing, the Court imposed a partial sentence of Level V, suspended to Level III with community based treatment, no unlawful contact with the victim's brother, no contact with the victim without parental supervision, and no unsupervised contact with children under 12, except the defendant's brother. The Court also imposed costs of $130.00 payable immediately, but noted that the defendant could work out a payment plan. The Court reserved its decision about whether this juvenile defendant, under the facts and circumstances presently before the Court, should be placed on the sex offender registry at Tier I immediately, whether the defendant should be relieved of that designation immediately, or whether the Court should defer making that determination until a later date after time, treatment, and additional testing have occurred.

■ Pursuant to DEL.CODE ANN. tit. 11, § 4121(a)(4) a. and b., the juvenile defendant in this case is defined as a "sex offender" because he has been adjudicated under DEL.CODE ANN. tit. 11, § 767, Unlawful Sexual Contact in the 3rd Degree, a class a misdemeanor.

The Court first turns to the question of whether our Delaware Legislature now permits a Family Court Judge the discretion to relieve a juvenile who has been adjudicated on a sex related offense from registering as a sex offender. As a special consideration in this matter, the Court notes that the victim in this case was under 12 years of age, being 5, and the defendant was 14. The Court's focus turns on the wording of DEL.CODE ANN. tit. 11, § 4121(d)(6).[2] In a rather recent Decision, this Judge has already expressed how

---

**2.** Notwithstanding any provision in this section or in § 4120 of this title to the contrary, any person who would otherwise be designated as a sex offender pursuant to this section and to § 4120 of this title may petition the sentencing court for relief from such designation, and from all obligations imposed by this section and § 4120 of this title if:

   a. The Tier II or Tier III offense for which the person was convicted was a misdemeanor and the victim was not a child under 12 year of age; and

   b. The person has not previously been convicted of a violent felony, or any other offense set forth in paragraph (a)(4) of this section, or of any offense specified in the laws of another state, the United States or any territory of the United States which is the same as, or equivalent to, such offenses; and

   c. The sentencing court determines by a preponderance of the evidence that such person is not likely to pose a threat to public safety if released from the obligations imposed by this section, and by § 4120 of this title.

Notwithstanding anything in this paragraph to the contrary, no person designated as a Tier II or Tier III sex offender shall be afforded relief from designation as a sex offender if the victim of any of the offenses for which the person was convicted were less than 12 years old at the time of the crime, *unless the person was also less than 18 years old at the time of the crime in which case the prohibition set forth in this sentence shall not apply.* Any person seeking relief from designation as a sex offender under this paragraph shall file a petition with the sentencing court prior to sentencing requesting such relief. The petition shall be granted or denied by the sentencing court after it weighs all relevant evidence which bears upon the particular facts and circumstances of the offense, and the character and propensities of the offender (emphasis added).

difficult the present statute is to interpret.[3] The most recent wording of Subsection (6) of DEL.CODE ANN. tit. 11, § 4121(d) is the result of changes made by the Delaware Legislature on May 17, 2007, when our Legislature became one of the first six states to attempt to conform Delaware's present law to the federal Adam Walsh Child Protection and Safety Act, signed by President Bush in 2006.[4] As this Judge noted in the recent *Fletcher* case, the present wording of DEL.CODE ANN. tit. 11, § 4121(d)(6) might be interpreted in a case, such as the present one, to mean that the Family Court Judge has the discretion to permit the juvenile sex offender to be relieved from the obligations of registration as a sex offender.[5]

The Deputy Attorney General, although requesting a Tier I registration for law enforcement purposes only, has indicated the State's belief that the wording of the present statute permits the Family Court Judge the discretion to relieve this juvenile from any tier level registration. Furthermore, the Deputy Attorney General is not opposed to the possibility that this Judge may also defer making the decision until a later date on whether or not this juvenile should be registered.

Thus, given the present wording of Section 4121(d)(6), and without objection from the State, the Court holds that the Family Court Judge has the discretion to register or relieve from registration a juvenile defendant at such time as the Court deems it to be in the best interests of the victim and the public, as well as in the best interest of the defendant. The Court's decision may be made immediately or deferred until such time as the Court deems appropriate to best serve all of these purposes, even as late as just prior to when the defendant becomes 18 years of age.

In the *Fletcher* case, this Judge analyzed and described recent transitions of the sex offender registration laws concerning juvenile defendants in a few other states. Among those were the states of Texas and Alabama.[6] Both states' changes of laws came as a result of their concern for the harm that registration could cause to the juvenile delinquent, with that harm outweighing any protection the public might receive from registration and community notification. As a consequence, a Texas judge has four options: (1) the Texas Judge can excuse the juvenile from registering, (2) he or she can de-register a juvenile who has previously been registered, (3) he or she can defer a decision on requiring registration until the juvenile has completed treatment, or, (4) he or she may require the juvenile to register, but restrict that information simply to law enforcement and criminal justice agencies.[7]

Under Alabama's present law, a juvenile offender is required to receive sex offender treatment. Prior to the juvenile offenders' projected release from treatment, the treatment provider provides a risk assessment of the juvenile to the sentencing Judge. Based upon a review of that risk assessment, the Court then has the discretion of whether or not the juvenile needs to be registered. Furthermore, depending upon the risk to the public for re-offending, the Court can also determine whether or not to simply register the juvenile for police agencies' knowledge only, or to include notification provisions for the public.[8]

---

3. *Fletcher v. State*, No. 0404010688, 2008 WL 2912048 (Del.Fam.Ct. Jun. 16, 2008).

4. Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901–16981 (2006).

5. *Fletcher*, 2008 WL 2912048, at *26–28.

6. *Id.* at *11–12.

7. TEX. C.C.P., Art. 62.351 and 62.352 (2005).

8. ALA.CODE § 15–20–27 through 28 (1999).

The policies of the Legislatures of Texas and Alabama take into account the often negligible protections registering a juvenile offender affords the victim and the general public, while, at the same time, recognize the considerable stigma and harm to the defendant and the defendant's family. Those states have recognized the likely damage the stigma of public notification will cause to the chance of success for the successful rehabilitation of the juvenile defendant. Such polices are in tune with how Delaware's Legislature has traditionally deemed it appropriate to treat our youthful offenders: to wit, while implementing protections for the victim and the general public, viewing a juvenile delinquency matter, except for a few specific crimes, as a civil matter conducted in the best interests of rehabilitating the juvenile defendant.[9]

Given the Attorney General's much appreciated latitude permitted the Court in this case, the present wording of DEL.CODE ANN. tit. 11, § 4121(d)(6), and the way in which our Delaware Legislature has deemed it appropriate to treat our juvenile offenders, this Court very much favors in this case applying the philosophies and practices which have been clearly adopted by the legislatures of Texas and Alabama, both of which are in tune with our Delaware Legislature. In arriving at the Court's final Decision in this case, the Court has taken into consideration the following factors:

1. The defendant has no previous record.

2. The independent professional opinion of the psychologist rendered in the present evaluation of this juvenile stated that he presently was at low risk for re-offending, and recommended against registration.

3. Numerous recommendations supplied to the Court indicated that this 14 year old was very helpful, very respectful, and had always appeared as a pleasant child.

4. This juvenile comes from a closely knit and supportive family with strong family values.

5. This juvenile has some learning disabilities which may in some ways impact upon the juvenile's maturity level and appropriate understanding of sexual boundaries.[10]

6. Last, but certainly not least, the impact on the victim and the victim's family, and what is necessary to protect the victim as well as the general public.

Given the Court's consideration of all of the above factors, the Court finds it appropriate that the decision of whether this juvenile should be required to register as a Tier I sex offender for law enforcement purposes only, shall be deferred until after the juvenile has undergone his sex offender treatment. Once treatment is completed, the treatment provider shall provide a risk assessment of the juvenile to the Office of the Attorney General, the juvenile's attorney, and to the sentencing Court. Unless within 30 days after receipt of that report the Attorney General's Office files a motion seeking to renew its request to

---

9. DEL.CODE ANN. tit. 10, § 1002 (1999).

10. *See also Fletcher*, 2008 WL 2912048, at *9–10.

have this juvenile registered at a risk assessment Tier I, the juvenile shall not be registered as a sex offender. If, however, the Office of the Attorney General files a timely request to renew, the Court will then proceed to hold a hearing on the matter.

IT IS SO ORDERED.